IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

\*

PARRIS WALL,

     Petitioner.         \*                    CR 99-33

v.                      \*

                                 **FILED**

UNITED STATES OF AMERICA,  \*            JUN 2 7 2007

     Respondent.

                        \*            **U.S. DISTRICT COURT**
                                        **DISTRICT OF DELAWARE**

## PETITIONER'S MOTION TO ALTER OR AMEND JUDGEMENT.

    NOW COMES,the Petitioner,Parris Wall,hereinafter (Petitioner or Wall) proceeding pro se,in the above titled matter,files this motion to ALter or Amend Judgement pursuant to F.R.Civ.P. 59(e).For the folling reasons Petitioner ask the Court to alter or amend it's prior judgement.In support thereof it is stated:

1.

## Discussion

### Reconsideration

A motion to alter or amend a judgement is brought under F.R.Civ.P. 59(e) must be filed no later than (10) days after the entry of judgement.The judgement in this case was entered in this matter on June 13,2007.Petitioner received the said judgement on June 18,2007.Thus the instant motion dated June 25,2007 is timely filed **See** $\sum_{X}$ A .

Reconsideration is warranted only where controlling law has been changed,new evidence is available  clear error must be corrected or manifest injustice prevented.**Bartz v.Agway,849 F. Supp. 166-167 (N.D.N.Y. 1994)(citation omitted).** A motion for reconsideration is appropiate when a moving party can demonstrate that the Court overlooked"controlling decisions or factual matters that were put before it on the underlying motion,and which had they been considered,might have reasonably altered the result before the Court. A motion for reconsideration is not to be used when a moving party simply does not agree with the wa(t) the original decision was resolved. **In Re Houbigant Inc., 914 F.Supp.997,1001 (S.D.N.Y. 1996).**

This Court recognized that pro se pleadings should be construed in a liberal and deferential manner,citing,**Haines v. Kerner,404 U.S. 519,520-21(1972).**

Petitioner respectfully submitts that this Honorable Court has overlooked and misconstrued controlling decisions,material and factual matters,and clear error.

## PROCEDURAL BAR

This Court in their June 13,2007,memorandum opinion and order refused to entertain the Petitioner's "Jailhouse Informant -Spy in the Camp issue that he raised in his Section 2255 petition, because it was raised on direct appeal,stating that the petitioner may not use Section 2255 to relitigate issues already decided on direct appeal.

However,although petitioner's counsel raised the above arguement on direct appeal,it was not heard .See Government's Response and Third Circuit Court of Appeals May 7,2001 decision, EXHIBIT _____.The government concedes that the record is barren.Therefore,Section 2255 is the proper vehicle to expand the record.The district court overlooked the fact that the petitioner is allowed to expand the record on his 2255 with the documents that were submitted with his 2255 petition.Petitioner is not relitigating,because his claims have not been heard on the merits as of yet.This Court should allow at the very least an evidentiary hearing to expand the record,as is consistent with this circuits holding, United States v.Brink, 39 F.3d. 419 (3rd.Cir.1994).

## CAUSE

A claim that the petitioner did not raise at an earlier time because of inneffective assistance of counsel would constitute

an allegation of cause.*Trial counsel wae appeal counsel. **See,**
**United States v. Garth 188 F.3d. 99,107 (3rd.Cir.1999).**

## PREJUDICE

Petitioner was prejudiced by counsels failure to object
to the introduction of the testimony of Aaron Collins.Had proper
objections been made at trial,or at pre-trial stages,Collins
testimony may not have been allow in. In (7) days of trial and
testimony,although brief on behalf of Collins,his testimony was
the one testimony that the jury inquired about,**See Trial Tr.I-6,**
**attached as EXHIBIT** $($   $)$ ,and besides the testimony of  the Means,
was the only testimony that placed Wall and Scott together at the
scene of illegal activities. Normally this would only be  the
question of witness credibility,but due to the circumstances of
which this information of the petitioner is alleged to be gathered
(By being A Spy in the Defense Camp),there is a strong likelihood
that Collins testimont) is the product of conversation with the
Petitioner,and his co-defendant Leroy Coley,who was also housed
at the same prison with Collins and Wall,and participate in
legal discussions concerning the instant case. Petitioner contends
that Collins didn't even know him on the street,never did business
with or around him. **SEE, COLLINS-DIRECT-Trial Transcript Page(s) :**

> **Page 86 - 22.** Q- Are you familiar with an individual named Pete
> $\mathcal{D}.1$     **23.** or Petey?
>
> **24. A -** Right now,Yes.
>
> **25. Q-** Is he somebody you knew before you were arrested?
>
> **Page 87 - 1. A-** No,sir.I seen him every now and then.

$\mathcal{D}.2$                              4.

Collins testimony was not that of an eye witness as the government contends, but that of a "Spy in the Defense Camp."

On June 18,2007,the petitioner received this Courts Memorandum Opinion and Order.Although not entertaining the titioner's claim on the merits,on page (7) of this opinion foot **note** #4,the Court concludes that even if the petitioners claim was to be evaluated on the merits,that the petitioner still is entitled to any relief,stating; the deliberate use of a jailhouse informant to elicit incriminating information from a defendant violates the defendant's right to counsel,if (1) his right to counsel was attached at the time of the elicitation(**in the instant case,at the time they were cellmates**).The first prong is satisfied. (2) the informant was working as a Government agent; and (3) the informant"deliberately elicited "incriminating information from the defendant. The government in their June 5,2003 response to the petitioner's 2255 petition,misleads the Court that there was no agreement between themselves an Collins.**SEE** the **Governments June 5th 2003 response, in pertinent part.... page**⊗ **paragraph** 11 .   Ex. F .

SEE EX E

Based on the misleading statement made by the government, that there was no agreement at the time Wall and Collins were cellmates,between Collins or the Government,the court cites in their most recent June 12,2007 order,**Matteo v.Supertindent**,171 F.3d  877,891 (3rd.Cir.1999).

However,there was an agreement.Petitioner has submitted a copy of that agreement to the Court for review which was signed by Aaron Collins and his attorney at the time Christopher Koyste, sq.,dated May 20,1999,<u>See</u>, EXHIBIT #  G  attached "Agreement

between Aaron Collins and Government.

Writing from **Matteo**, ...The lower federal court have explicated the holding in **"Henry"** in some detail: in particular several have held that the existence of **"express or implied** agreement between the state and the informant is an additional factor supporting a finding of agency."**At minimum...there must be some evidence of that agreement express or implied,between the individual an a government official existed at the time the elicitation takes place."**

In this instant case of the petitioner,he has shown that there was an agreement at the time in question that he and Collins were cellmates.Express ,implied,or quid pro quo,either is sufficient to demonstrate an agreement, thus satisfying the prongs -criteria to show that petitioner's complained of Sixth Amendent right to be free from custodial interragation was violated,and that he was prujudiced by this infringment upon his rights.

FUTHER PROOF THAT COLLINS WAS ELICITING INFORMATION
FROM WALL AND COLEY WHILE INCARCERATED WITH THEM .

SEE ,affidavit fom Leroy Coley  attached as EXHIBIT $\mathcal{H}$ .
This is an affidavit from Coley  in which he speaks of this eliciting of information from Aaron Collins,which can be inferred to (reasonably inferred) to manufacture a more seemingly credible testimony.More conclusive than the Affidavit from Coley is EXHIBIT
$\mathcal{I}$ (interview  notes of Aaron Collins with U.S.Attorney Mr. Andrews,dated September 21,1999,paragraph #16. Collins admitts that he was gathering information from co-defendant Coley to

6.

share  with US.Attorney Andrews,and other Detectives on this case.
During this interview Collins states in the referenced paragraph,
**"From my knowledge from Leroy in jail he never messed with Joe."**
(Leroy "Coley")  Joe(Joseph Scott).

WHEREFORE,the petitioner Wall, has demonstrated that
this Honorable Court has overlooked crucial facts,as well, he
has hurdled the prongs and criteria to be grante relief on his
claim.The attached/enclosed exhibits clearly demonstrate this.

Petitioner ask that this Honorable Court reconsider,and
enterain his 2255 petition on the merits,and take into full
consideration the exhibits he ha attached to this  instant
motion in considering his claims and in the least provide  the
petitioner with an evidentiary hearing so that he may develope
a factual record,and call witnesses in his behalf in this
matter.Evidentiary hearing is consistent with the law of this
circuit where a petitioner ha made a colorable claim. BRINK.

Dated:

JUNE 25, 2007

Mandty

RESPECTFULLY SUBMITTED,

Parris Wall
Parris Wall
U.S.P. Lewisburg
P.O.Box 1000
Lewisburg,PA 17837-1000

7.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 99-33-4-JJF |
| | : | |
| | : | Civil Action No. 03-148-JJF |
| PARRIS L. WALL, JR., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## O R D E R

At Wilmington, this $\underline{13}$ day of June 2007, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1.   Defendant's Motion Requesting Leave To Amend 28 U.S.C. 2255 Petition Pursuant To Federal Rules Of Civil Procedure 15(a) (D.I. 326) is **DENIED**.

2.   Defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody (D.I. 213) is **DENIED**.

3.   Because the Court finds that Defendant has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), a certificate of appealability is **DENIED**.

UNITED STATES DISTRICT JUDGE

$Ex. A$

(Confrontation Clause does not require showing of unavailability for spontaneous declaration and medical examination exceptions to hearsay rule); *Government of Virgin Islands v. Joseph*, 964 F.2d 1380, 1386 n.6 (3d Cir. 1992). The "state of mind" exception, now codified in Fed. R. Evid. 803(3), is at least one hundred years old, and is therefore a "firmly rooted" hearsay exception. *See United States v. Alfonso*, 66 F.Supp.2d 261, 267 (D.P.R. 1999).

Thus, the hearsay objections were properly overruled, and the Confrontation Clause objection was not timely made and is therefore waived.

### VI. THE DISTRICT COURT DID NOT COMMIT PLAIN ERROR IN FAILING TO DECIDE WHETHER THE GOVERNMENT HAD VIOLATED DEFENDANT WALL'S SIXTH AMENDMENT RIGHT TO COUNSEL, WHEN DEFENDANT WALL DID NOT RAISE THE ISSUE.

### A. Standard of Review.

Defendant Wall did not raise this argument in the District Court. Thus, it is reviewed for plain error.

### B. There Was No Violation of Defendant Wall's Sixth Amendment Rights.

During cross-examination of the witness Aaron Collins, defense counsel for Walls inquired as to Collins' contact with Walls while incarcerated. Collins stated that he had been cellmates with Wall for about three weeks, and that during that time Wall had shown him what the witnesses Johnny and Joann Means "were saying about their case." A:471. The record does not show whether this occurred before or after Collins was cooperating with the Government, and thus the record does not show whether Collins was in any sense an

Ex. B

"agent" of the Government at the relevant time. The record does not show whether anybody connected with the prosecutors or investigators in this case had any knowledge that Wall and Collins had been housed together. Further, the record is barren of any evidence that Collins made any inquiries of Wall about his case or his attorney, or that Wall told Collins anything about Wall's defense strategy, view of the evidence, or anything else.

The record is also barren of any evidence that the Defendant raised anything related to this as an issue in the District Court. Thus, while it is true that "`deliberate use of jailhouse informants to elicit incriminating information" would be a violation of the Defendant's sixth amendment rights, *see United States v. Brink*, 39 F.3d 419, 421 (3d Cir. 1994), there is no record basis for making any such allegation in this case, and, in any event, the District Court did not commit plain error in not raising the issue *sua sponte*.

### VII. ALLOWING TESTIMONY THAT A DETECTIVE HAD A "GOOD INVESTIGATIVE REASON" FOR INSTRUCTING A WITNESS TO LIE TO ANOTHER POLICEMAN WAS NOT PLAIN ERROR.

A. **Standard of Review.**

Admitting evidence pursuant to Rule 403 is generally reviewed for abuse of discretion. *See United States v. Driggs*, 823 F.2d 52, 54 (3d Cir. 1987). Incorrect admission of evidence will not warrant reversal of a conviction unless there is prejudice that affects a substantial right of a defendant. *See United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir. 1993). However, if no Rule 403

B.2

District Judge:  Honorable Roderick R. McKelvie

Argued April 3, 2001

BEFORE: ROTH, STAPLETON and GREENBERG, <u>Circuit Judges</u>

## JUDGMENT

This case came on to be heard on the record before the United States District Court for the District of Delaware and was argued on April 3, 2001.

On consideration whereof, it is

ORDERED AND ADJUDGED by this Court that the judgments of the District Court entered February 1, 2000, February 8, 2000, and March 7, 2000, be and the same are hereby reversed, and these matters are remanded to the District Court with instructions to resentence the defendants so that their terms of supervised release are consistent with law. All of the above is in accordance with the opinion of this Court.

ATTEST:

*Marcia M. Waldie*

Clerk

Dated: May 7, 2001

B·3

Because those drug quantities were not found by a jury beyond a reasonable doubt, the Court was not permitted to take them into account and to impose a penalty that went beyond the statutory maximum of three years. See Apprendi, 120 S. Ct. at 2362-63; Meshack, 225 F.3d at 578 (vacating and remanding terms of supervised release because they exceeded the statutory maximum in violation of Apprendi). Accordingly, we will vacate and remand on the issue of supervised release terms only for the District Court to impose supervised release terms of exactly three years for each appellant.

## III.

We have carefully considered each of the other issues raised on appeal, and we find them without merit.[6] For the foregoing reasons, we will affirm the convictions and sentences of imprisonment of all three appellants. We will, however, vacate their terms of supervised release as discussed herein and remand for further proceedings consistent with this opinion.

---

[6] Scott raised one additional issue: insufficiency of the evidence for conviction. Coley raised six additional issues: (1) error in the denial of his severance motion; (2) partial admission of the testimony of an investigating detective; (3) insufficiency of the evidence for conviction; (4) failure to give a requested jury instruction on lost evidence; (5) error in denying his request for a reduction in offensive level for acceptance of responsibility under the Sentencing Guidelines; and (6) application of enhancements for crack in sentencing. Wall raised three additional issues: (1) error in the admission of hearsay evidence; (2) insufficiency of the evidence for conviction; and (3) violation of his Sixth Amendment right to custodial interrogation.

11

B.4

I-6

1    THE COURT:  To give specific instructions to the
2 Marshal one way or the other about what people should be able
3 to take home with them -- although we did have one jury here
4 that took home all the evidence after the trial.  We have
5 talked to the Marshals about that.
6    In this case, I expect jurors may continue to
7 think about the evidence on their own, and the risk is
8 whether they may review the evidence with spouses.  I think
9 we have already given them an instruction not to talk to
10 people.  I will confirm with Juror No. 2 that in taking the
11 notes home she didn't review them with anybody to
12 deliberate.  But I don't think I will suggest that there is a
13 problem with her thinking about the case in the evening.
14    I will suggest to the Marshal that they not allow
15 the jury panel to take papers home with them at night, and it
16 probably prevents the risk of someone else looking at them
17 and talking to them about it.
18    Let's bring the jury in.
19    (Jury enters courtroom at 1:47 p.m.)
20    THE COURT:  Welcome back.  We received a second
21 note from you that reads as follows:
22    "Aaron Collins, also known as Ernie, could have
23 testified about White Oak Condominiums meeting with Joe
24 Scott.  Could we have a copy of the transcript of," and the
25 line that you drew goes back up to the testimony about the

1 White Oak Condos.
2    We don't have a transcript of that prepar
3 don't have a transcript of the trial prepared.  I kno
4 you may have noticed that Mr. Malik during his closin
5 argument read a portion of the trial testimony.  That
6 because he had asked the court reporter to prepare it
7 sometime in advance of the time he read it.  So we do
8 the testimony available to read to you.
9    My suggestion is in this context, in ligh
10 fact that it was one part of the trial, you need to l
11 all of the evidence and do your best to recall what t
12 testimony was on your own.
13    Before I excuse you, I understand that so
14 jurors took their notes home with them last night.  I
15 think I talked about that one way or the other.  In f
16 don't think I talked to the Marshals about whether it
17 good or bad idea.  Although you can guess it is a goo
18 not to take the evidence home separate from your note
19    One of the risks about taking the notes h
20 you is it may create an opportunity for someone in th
21 household who may want to talk to you about the case
22 your deliberations.  I think you need to be careful a
23 that.  It is probably a good idea to leave the notes
24 Tonight, if you haven't reached a verdict by the end
25 day, why don't you leave your notes here.

I-7

1    I would like each of you to confirm for me that
2 it is correct that you haven't been consulting with anybody
3 about your deliberations beyond the jury here.  All right?  I
4 will do that by asking, anybody who has consulted with other
5 people about their jury deliberations beyond the people in
6 the jury panel, you could raise your hand.
7    Nobody raising their hand, I am assuming that no
8 one has.
9    Appreciate your work on this.  I know you are
10 working hard on it.  We all appreciate very much the time and
11 attention you are giving to the case.
12    (Jury leaves courtroom at 1:50 p.m.)
13    MR. RAMUNNO:  Your Honor, I guess maybe it would
14 be premature.  But at one point in time Your Honor had said
15 something about tomorrow Your Honor wasn't available.  I
16 don't know if the Court had made a determination what is
17 going to happen tomorrow.
18    THE COURT:  I have made arrangements with another
19 Judge in the courthouse to take any verdict that comes in
20 today or tomorrow.
21    MR. RAMUNNO:  Is the same approach, at 4:30, if
22 we don't hear anything, you will let them go?
23    THE COURT:  Correct.  We will follow the same
24 approach we had before.  Which is that in default of the jury
25 telling us something different, you can assume that they will

1 leave tonight at 4:30 and be here tomorrow morning an
2 you will get a call as soon as we have any additional
3 information.
4    MR. RAMUNNO:  Is the verdict going to be
5 this courtroom or do we have to go somewhere else tom
6    THE COURT:  Well, I am assuming that unle
7 hear otherwise, it will be taken in here by another J
8 the Court.
9    MR. RAMUNNO:  That is fine, Your Honor.
10    THE COURT:  See you all later.
11    (Court recessed.)
12    - - -
13 Reporter:  Kevin Maurer
14
15
16
17
18
19
20
21
22
23
24

Ex. C

Collins - direct                86

1    A.    Because half a kilo of crack calls for jail time.

2    Q.    Did you have any discussions with Joseph Scott

3    about what his future course of dealings with Joann Means

4    would be?

5    A.    Yeah.  He's not going to deal with her no more.

6    Q.    Did you hear about Leroy Coley being arrested?

7    A.    Yes, sir.

8    Q.    And approximately how long after his arrest did you

9    hear about that?

10   A.    That was like a couple days after.

11   Q.    Do you remember who you first heard it from?

12   A.    I first heard it from Joe Scott.

13   Q.    Do you remember what it was, if anything, he said

14   about it?

15   A.    He said Leroy got knocked off.

16   Q.    And when he said Leroy got knocked off, you knew

17   who the Leroy was that he was referring to?

18   A.    Not right offhand, so I read the paper.

19   Q.    And did you read a story that gave Leroy's full name

20   in the paper?

21   A.    Yes, sir.

22   Q.    Are you familiar with an individual named as Pete or

23   Petey?

24   A.    Right now, yes.

25   Q.    Is he somebody you knew before you were arrested?

Ex. D

1   A.    No, sir.  I seen him every now and then.

2   Q.    Is he somebody you'd be able to identify based on

3   what you saw before you were arrested?

4   A.    Yes, sir.

5   Q.    And in terms of Petey, do you see him in the

6   courtroom?

7.  A.    Yes, sir.

8   Q.    And can you describe him for the jury?

9   A.    Kind of tall, heavy-set with glasses.

10  Q.    And Joseph Scott that you mentioned, do you see him

11  in the courtroom?

12  A.    Yes, sir.

13  Q.    And can you describe him for the jury?

14  A.    Puerto Rican-like.  Beard, mustache.

15           MR. ANDREWS:  And the record should reflect

16  the identifications of Mr. Wall and Mr. Scott.

17  BY MR. ANDREWS:

18  Q.    By the way, when you on -- before you were arrested,

19  did you know what Pete's real name was?

20  A.    No.

21  Q.    Do you remember seeing a person you knew as Petey

22  around about May 6th of 1999?

23  A.    Yes, sir.

24  Q.    And why is it that the date sticks in your mind?

25  A.    I was going to talk to a lawyer about a driving case.

Ex. D 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 99-033-4-JJF |
| | : | |
| | : | Civil Action No. 03-148-JJF |
| PARRIS L. WALL, JR., | : | |
| | : | |
| Defendant. | : | |
| | : | |

Colm F. Connolly, Esquire, United States Attorney, Shannon Thee
Hanson, Esquire, Assistant United States Attorney of the UNITED
STATES DEPARTMENT OF JUSTICE, Wilmington, Delaware.

Attorney for Plaintiff.

Parris L. Wall, Jr., Pro Se Defendant.

## MEMORANDUM OPINION

June 13, 2007
Wilmington, Delaware

Ex. E

## A.    Jailhouse Informant

In the context of his direct appeal, Defendant raised the argument that his Sixth Amendment rights were violated when he was housed with Aaron Collins, a jailhouse informant.  The Third Circuit summarily rejected Defendant's argument concluding that it was meritless.  Section 2255 may not be used to relitigate issues already decided on direct appeal.  DeRewal, 10 F.3d at 105 n.4.  Accordingly, the Court concludes that Defendant is not entitled to relief on his claim.[4]

## B.    Ineffective Assistance Of Counsel

To succeed on an ineffective assistance of counsel claim, a defendant must satisfy the two-part test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  The first prong of the Strickland test requires a

---

[4]    Even if the Court evaluates the merits of Defendant's claim, the Court concludes that Defendant is not entitled to relief.  The deliberate use of a jailhouse informant to elicit incriminating information from a defendant violates the defendant's right to counsel, if (1) his right to counsel attached at the time of the elicitation; (2) the informant was working as a Government agent; and (3) the informant "deliberately elicited" incriminating information from the defendant.  Matteo v. Superintendent, 171 F.3d 877, 891 (3d Cir. 1999).  Although Defendant's right to counsel attached, the Court cannot conclude that Collins was acting as a Government agent during the three weeks in June when they were housed together. Although Collins had always indicated a willingness to cooperate with the Government to obtain a guilty plea, the record demonstrates that the Government was unable to reach an agreement with Collins until September 13, 1999.  (D.I. 236, Decl. of Richard Andrews & Exh. A-G.)  Accordingly, Defendant has not established that there was an agreement between Collins and the Government that would make him a Government agent at the time he was housed with Defendant.  Matteo, 171 F.3d at 893.

7

$Ex. E$

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff/Respondent,            )
                                         )    Crim. Action No. 99-33-RRM
        v.                               )
                                         )    Civil Action No. 03-148-JJF
PARRIS WALL,                             )
                                         )
        Defendant/Petitioner.            )

## RESPONSE TO §2255 PETITION

The United States responds to Defendant Parris Wall's section 2255 petition as follows:

### *Timeliness*

1.    The Defendant's section 2255 petition is untimely, for the reasons stated in the Government's previously filed motions. *See* D.I.[1] 214 & 219.

### *Procedural Background*

2.    The Defendant and four others were charged in a multiple count indictment, returned May 11, 1999. (D.I. 2). The Defendant (and the other four co-defendants) were charged in Count One with conspiracy to distribute cocaine and crack cocaine during a six-month period. In Counts Six and Seven, the Defendant was charged by himself with distribution of crack cocaine on January 28, 1999, and on February 10, 1999. Two of the defendants entered guilty pleas and testified at trial as Government witnesses. A ten-day jury trial was held in September and October

---

[1] The Docket Items in the present case are referred to as "D.I. ___." The Government has attached to this Response two Declarations and Exhibits A through H.

Ex. F.

August 16, 1999.[8] The plea agreement was not immediately accepted. Mr. Anderson asked for discovery, to which the Government responded. *See* AD, Exh. C. The Government provided Mr. Anderson with discovery right up until September 13, 1999. *See* AD, Exh. D. However, on September 13, 1999, Mr. Anderson accepted the Government's plea offer, which had been changed a second time. (D.I. 75). *Compare* ¶3 of D.I. 75 with ¶3 of the July 21 proposed plea agreement (the offense level is now said to be 32, with an upward adjustment of two being a legal matter for the Court). On September 13, 1999, the Government advised the Court of the plea, and it was scheduled for the next day, September 14, 1999. *See* AD, Exh. E. Once Collins entered the plea, in which he agreed to be a witness at the trial, and the Government completed interviewing him, the Government provided summaries relating to his three interviews to defense counsel. *See* AD, Exhs. F&G.

11.    The earliest that Collins became a Government agent was September 13, 1999, when his counsel indicated that he accepted the plea agreement. An "off-the-record proffer" letter does not convert an individual into a Government agent. *See Moore v. United States*, 178 F.3d 994, 999-1000 (8th Cir. 1999). Absent an agreement, express or implied, between Collins and a Governmental official in June 1999, he was not then a Government agent. *See Matteo v. Superintendent*, 171 F.3d 877, 893 (3d Cir. 1999) (en banc). Not only is there no evidence that there was an agreement in June 1999, the available evidence shows that there was no agreement, and continued to be no agreement until September 1999.    An agreement in September does not retroactively make Collins a Government agent in June. Thus, the sixth amendment claim is without merit.

---

[8] Undersigned counsel took vacation from July 24 to August 13, 1999.

8

F - 1

**WHEREFORE**, since the available records show conclusively that the Defendant is not entitled to relief, *see United States v. Nino*, 878 F.2d 101, 103 (3d Cir. 1989), the Court should deny the petition without a hearing.

COLM F. CONNOLLY
United States Attorney

By: Richard G. Andrews

Richard G. Andrews
First Assistant United States Attorney

Dated: 6/5/03

9

F. 2



**U.S. Depart. ent of Justice**

*United States Attorney's Office*
*District of Delaware*



---

*Chase Manhattan Centre*                    *(302) 573-6277*
*1201 Market Street, Suite 1100*         *FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

May 20, 1999

Christopher Koyste, Esquire
Federal Public Defender's Office
First Federal Plaza, Suite 110
704 King Street
Wilmington, Delaware 19801

　　　Re: **Aaron Collins**

Dear Mr. Koyste:

　　　Your client may be interested in meeting with the investigating agents and me for purposes of an "off-the-record" proffer or discussion. We would consider such an "off-the-record" proffer or discussion in formulating an appropriate resolution of this matter.

　　　In order to assure that there are no misunderstandings concerning the meaning of "off-the-record," I am writing to clarify the ground rules for any "off-the-record" proffer or discussion with your client. First, no statements made by you or your client, or other information provided by you or your client during the "off-the-record" proffer or discussion will be used directly against your client in any criminal case.

　　　Second, the Government may make derivative use of and may pursue any investigative leads suggested by any statements made by or other information provided by you or your client. This provision is necessary in order to eliminate the necessity for a <u>Kastigar</u> hearing at which the Government would have to prove that the evidence it would introduce at trial or any related legal proceeding is not tainted by any statements made by or other information provided by your client during the "off-the-record" proffer or discussion.

　　　Third, in the event your client is a witness at any trial or other legal proceeding relating to the above-captioned matter and offers testimony materially different from any statements made or other information provided during the "off-the-record" proffer or discussion, the attorney for the Government may cross-examine your client and introduce rebuttal evidence concerning any statements made or other information provided during the "off-the-record" proffer or discussion. This provision is necessary in order to assure that your client does not abuse the opportunity for an "off-the-record" proffer or discussion, does not make materially false statements to a Government agency, and does not commit perjury when testifying at trial.

Exhibit C

000760

Christopher Koyste, Esq.
May 20, 1999
Page 2

---

Furthermore, your client expressly waives any right to challenge the derivative use of such statements. It is the intent of this agreement that such derivative use is proper and the Government and your client hereby agree that Federal Rule of Criminal Procedure 11(e)(6) and Federal Rule of Evidence 410 do not govern such derivative use.

It is understood, in this regard, that your client is not entitled, at this juncture, to any consideration regarding the charges against him just because he makes a proffer. Any such consideration, if at all, will be unilaterally determined by our office only after the proffer is made.

I trust that you will find these ground rules fair and reasonable. If your client wishes to engage in an "off-the record" proffer or discussion under these ground rules, would you and your client both sign this letter where indicated below.

Very truly yours,

CARL SCHNEE
United States Attorney

BY: Richard G. Andrews
Richard G. Andrews
Assistant United States Attorney

APPROVED: Aaron Collins
Aaron Collins

Christopher Koyste, Esquire
Counsel for Aaron Collins

DATE: 5/21/99

**000761**

Ex. G.

AFFIDAVIT OF PERCY TILTON
FOR: FARRIS WALL.

I attest under penalty of perjury that the foregoing is true and correct without any promises or coercion.

While being incarcerated at F.C.I., Fairton, I was in contact with Aaron Collin and Farris Wall, who are two of the other four persons listed on my indictment. I knew who Collins was, but was never in close association with him on the street, basically just a "Hello and Goodbye /whatbeen going on/(casually speaking)type of relationship. At times Wall, Collins and I went to the prison law library to talk together about the indictment in which we were charged togther and try to figure out how we came to be chargedtogether. Other times when Wall wasn't around Collins would ask me things about Wall such as"is he cool ,and is he a snitch", and I replied and said that he's cool and told Collins that I never heard anything bad about him out there,(meaning on the street.) Collins also asked me things pertaining to the wherabouts of Wall's residency, and specifically if Wall's lived in the building where thegreen bike (motorcycle)was parked. I told him "yeah",if there was bike there it was Petey's building,meaning defendant Wall.

At the present ,I thought nothing of these questions, and Wall, Collins and I continued to study the case together as usual. Through other conversations with Collins he mentioned that that(meaning Wall's apartment)must have been the spot where he met Scott. During the same conversation Collins asked me about certain items furniture ect., in Wall's apartment to confirm that this was the place he met Scott. I told Collins that I didn't know cause I hadn't been there , but if there was a motorcycle there in front of the building on the sidewalk it probaly was. On another occasion when Wall, Collins , and I were all together in the law library I recall Collins asking Wall,"That's your crib(meaning apartment)where the green bike be", and Wall responded like yeah thats the crib, and the three of us kept conversing as we were. Collins also questioned me as to whether Scott and I hung out on the street, and I told him that I didn't fool with Scott like that. All I ever took any of this to be is just getting acquainted withsomeone who was on the same case as I was.

On Septemger 27, 1999, Wall, Scott, and I started trial. Our lawyers all had Discovery material that was provided to them by the Government that we had never received. The Discovery consisted of statements of cooperation of Collins and the prosecution. Statements that were made less than a week after his arrest, and, statements that were taken from Collins on September 14,1999, in which he told the prosecutor that he lied in his earlier statements, because there was no plea agreement.

Ex. H

Dated:

Respectfully Submitted,

Leroy Coley

ELIZABETH A. RUSSO
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES
MAY 3, 2001

INTERVIEW W/ AARON COLLINS

DATE: TUES SEP 21, 1999    TIME: 0940

PRESENT: RICH ANDREWS, SHANNON HANSON AUSA

DET DIGIROLOMO, DET M°KEOWN ←←←

DAVID R. ANDERSON ESQ.

→→→→→

1) USED MARIJUANA, PCP, COCAINE

SMOKED all THE TIME, USED W/

PCP - 3 TIMES A MONTH

SNORTED COCAINE - 3 TIMES A MONTH

2) HAVE 1 PRIOR FELONY CONVICTION

3) PLED GUILTY TO (3) FELONY'S IN FED COURT

WAS FACING LIFE + 30 YEARS

NOW FACING 10 TO 14 years

RE: INTERVIEW

4) LIED FIRST TIME BECAUSE THERE WAS NO

PLEA AGREEMENT

DON'T LIE SECOND TIME

5) WORKED & SOLD CRACK TO MAKE

A LIVING    Exhibit I

~~Joe Asked~~

" From my Knowledge FROM LEROY IN JAIL
He NEVER messed w/ JOE "

1) Petey - "I KNEW HIM" AS "Pete".
   A) GREEN MALIBU WAS HIS RENTAL
   "little CHEVY "HOOPTY". He ALSO Rode A motorcycle
   I COULD IDENTIFY HIM.
         Joe's Boy "Petey".
   B) I've SEEN HIM buy some COOK FROM
      JOE. IT WAS MAY 6th. JOE WANTED
      me TO LOOK AT some Drugs He GOT FROM
      THE BAHAMAS. Went TO Pete's House
      IN WHITEOAK CONDO's. Pete, Joe & some
      CHICK. HAD 14 TO 15 OUNCES ON THE
      TABLE & WANTED AARON TO CHECK IT OUT.
      IT WAS COKE, BUT IT WAS SUPPOSED TO
      BE THE Drugs He GOT FROM THE BAHAMAS.
      DIDN'T BUY. Pete BOUGHT IT. JOE SAID
      IF YOU DON'T WANT THIS I WILL GIVE
      IT TO HIM.

   C) Pete WOULD SAY "SMYRNA IS MY SPOT"
      JOE TOLD HIM - ALSO.
      SAW Pete IN THE MALL, Pete SAID I'm

000734

# CERTIFICATE OF SERVICE

I, ___Parris Wall_____, hereby certify that I have served a true
and correct copy of the foregoing:

Rule 59 (E) Motion with
Exhibits

Which is deemed filed at the time it was delivered to prison authorities for forwarding to
the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to
litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage
prepaid envelope addressed to:

Richard Andrews, Esq.
U.S. Attorney
Suite 700
1007 Orange St
Wilmington, DE 19899-2046

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this __25th__ day of __June__, 2007

Respectfully Submitted,

Parris Wall

REG. NO. 04172-015